[No. B192832. Second Dist., Div. Four. Sept. 25, 2007.]

KATHERINE LEE BUCKLAND, Plaintiff and Appellant, v.
THRESHOLD ENTERPRISES, LTD., et al., Defendants and Respondents.

**COUNSEL**

The Carrick Law Group and Roger Lane Carrick for Plaintiff and Appellant.

Bingham McCutchen, Trenton H. Norris and Mark P. Pifko for Defendants and Respondents.

## Opinion

**MANELLA, J.**—When appellant Katherine Lee Buckland sought a preliminary injunction to prevent respondent Threshold Enterprises, Ltd. (Threshold), from selling its skin cream, Threshold demurred to Buckland's first amended complaint, which alleged that the skin cream constituted a misbranded or mislabeled drug. The trial court sustained the demurrer with leave to amend, and denied Buckland's request for injunctive relief on the ground that there was no operative complaint. After Buckland elected to stand on her complaint, judgments of dismissal were entered in favor of Threshold and the other respondents. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Buckland and the California Women's Law Center (Center) filed their first amended complaint in the underlying action on January 24, 2006. The complaint asserts 11 claims against Threshold and more than 30 other defendants that market skin lotions and creams, including nine claims by Buckland as an individual for fraudulent concealment, negligent misrepresentation and violations of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), the false advertising law (FAL) (Bus. & Prof. Code, § 17500 et seq.), and the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). Buckland sought injunctive relief, restitution, and damages.[1]

The first amended complaint alleges the following facts: Buckland is the executive director of the Center, which seeks to advance the civil rights of women and girls. Threshold and the other defendants sell skin creams or lotions that contain progesterone or other chemicals regulated by the Food and Drug Administration (FDA) under the federal Food, Drug, and Cosmetic Act (FDCA) (21 U.S.C. § 301 et seq.). Like the other defendants, Threshold has not complied with FDA regulations in marketing its skin cream, and its skin cream lacks adequate warnings about the chemicals.

On March 15, 2006, Buckland filed a motion for a preliminary injunction against Threshold. Her accompanying declaration states: "I do not make in this litigation any personal injury claims (though in using one of the products at issue in this litigation, I did suffer a skin rash). Rather, I am acting in this matter on my own behalf and as a consumer in the public interest, in light of my own personal desire to evaluate the claims of the products at issue in this case. I believe that a woman who advocates professionally for women's rights must be especially sensitive as an individual woman to the claims of products that purport to address women's health. I am acting in this litigation

---

[1] Neither the Center nor its claims are subjects of this appeal.

to evaluate, as an individual consumer, these defendants' respective products, incurring the cost of purchasing each of these products in order to meet the letter of the law to have standing to make appropriate claims regarding these products where the facts and law warrant, and thereby incurring the economic damages that provide standing under the statutes by which I am proceeding in the case." The declaration further states: "I am a consumer of these [p]roducts and have suffered damages in the amount of at least the purchase price of each [p]roduct. In the case of Threshold, I purchased their Source Naturals® Eternal Woman™ Natural Progesterone Cream through my attorney on August 31, 2005 for $14.99."

Threshold demurred to Buckland's claims in the first amended complaint, contending that Buckland lacked standing to assert claims under the UCL, FAL, and CLRA, and that she had failed to plead her common law fraud claims with specificity. In opposing Buckland's request for a preliminary injunction, Threshold argued that she was unlikely to prevail at trial on the grounds raised in the demurrer; in addition, it argued that the balance of hardships weighed against injunctive relief.

On June 19, 2006, the trial court sustained Threshold's demurrer to Buckland's claims with leave to amend, and denied her request for a preliminary injunction without prejudice, on the ground that she lacked an operative complaint. Buckland noticed an appeal from these rulings. After Buckland elected not to amend the first amended complaint, the trial court entered a judgment of dismissal in Threshold's favor on October 10, 2006. The court also entered judgments of dismissal in favor of respondents AllVia Integrative Pharmaceuticals, Inc.; Arterio, Inc.; Before and After Cosmetics LLC; Creativision, Inc.; Nature's Light, Inc.; NOW Health Group, Inc.; One Life USA, Inc.; Pure Essence Laboratories, Inc.; Sayge Biosciences, LLC; and Star Health & Beauty, LLC, which joined in Threshold's demurrer or otherwise sought dismissal of Buckland's claims on the basis of the ruling on Threshold's demurrer.[2]

---

[2] Respondents contend that Buckland's appeal should be dismissed as moot because judgments of dismissal have been entered on her claims. Although Buckland did not file a notice of appeal from the judgments of dismissal, we conclude that she may properly challenge the judgments on appeal. Buckland noticed an appeal from the denial of the preliminary injunction, which is a separately appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).) Because the denial of injunctive relief rests solely on the order sustaining Threshold's demurrer, our review properly encompasses the latter as an "intermediate ruling . . . which involves the merits or necessarily affects the . . . order appealed from." (Code Civ. Proc., § 906.) Moreover, as Buckland elected to stand on her complaint, the ruling on the demurrer also effectively ended litigation on her claims against Threshold and the other respondents, as alleged in the first amended complaint. Because respondents do not suggest they have been

## DISCUSSION

Buckland contends the trial court erred in denying injunctive relief and entering the judgments of dismissal after sustaining Threshold's demurrer. She argues that her claims against Threshold and the other respondents, as alleged in the first amended complaint, are legally tenable. We disagree.

### A. *Standards of Review*

■ In deciding whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm the plaintiff is likely to sustain if the injunction is denied, as compared to the harm the defendant is likely to suffer if the court grants a preliminary injunction. (*King v. Meese* (1987) 43 Cal.3d 1217, 1226 [240 Cal.Rptr. 829, 743 P.2d 889].) Here, the denial of injunctive relief and the judgment of dismissal rest solely on the trial court's ruling on Threshold's demurrer. For the reasons explained below, we agree with the trial court that Buckland's claims fail as a matter of law, and that injunctive relief is thus unavailable to her.

■ In examining the ruling on the demurrer, we "review the complaint de novo to determine whether . . . [the] complaint alleges facts sufficient to state a cause of action under any legal theory . . . [citation] . . . . [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151], fn. omitted.) If a proper ground for sustaining the demurrer exists, "this court will . . . affirm the demurrers even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court. [Citation.]" (*Id.* at p. 880, fn. 10.)

"When reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true. [Citation.]" (*Cantu v. Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 877, fn. omitted.) Here, the trial court's ruling on the demurrer also relied on Buckland's statements in her declaration in support of injunctive relief. When a party opposing a demurrer admits that it does not dispute facts extrinsic to the complaint, the trial court may properly treat these facts as judicial admissions for the purpose of testing the sufficiency of the complaint. (*Scafidi v. Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 560–562 [165 P.2d 260].) We therefore examine Buckland's complaint in light of her declaration.

### B. *Fraud Claims*

■ We begin with Buckland's claims for fraud by concealment and negligent misrepresentation (Civ. Code, §§ 1709, 1710). Generally, " ' "[t]he

---

misled about the scope of Buckland's appeal, we construe Buckland's appeal as also taken from the judgments of dismissal. (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 69 [28 Cal.Rptr.3d 124].)

elements of fraud . . . are (a) misrepresentation (false representation, conceal-ment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' [Citation.] [However, t]he tort of negligent misrepresentation does not require scienter or intent to defraud. [Citation.] It encompasses '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citation], and '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true' [citations]." (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173–174 [132 Cal.Rptr.2d 490, 65 P.3d 1255].) Furthermore, to establish fraud through nondisclosure or concealment of facts, it is necessary to show that the defendant "was under a legal duty to disclose them." (*Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735 [29 Cal.Rptr. 201].)

Here, Buckland alleged that respondents, in packaging and marketing their products, improperly suppressed the fact that the products contained poten-tially unsafe chemicals regulated under the FDCA and the Sherman Food, Drug and Cosmetic Act (SFDCA) (Health & Saf. Code, § 111330 et seq.), and otherwise portrayed the products as safe and healthful. The trial court concluded that Buckland's claims failed because she did not allege the pertinent omissions and misrepresentations with specificity, and did "not even make a gesture toward pleading justifiable reliance." We agree that Buckland has not pleaded reliance.

The focus of our inquiry is the requirement of actual reliance, which is a component of "justifiable reliance." (See *Garcia v. Superior Court* (1990) 50 Cal.3d 728, 737 [268 Cal.Rptr. 779, 789 P.2d 960]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 808–813, pp. 1164–1176.) A plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance, that is, to " 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom." (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1092 [23 Cal.Rptr.2d 101, 858 P.2d 568], quoting *Garcia v. Superior Court, supra,* 50 Cal.3d at p. 737.) Actual reliance is also an element of fraud claims based on omission: the plaintiff must establish that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." (*Mirkin,* at p. 1093.)

Buckland contends that she satisfied this requirement because she sus-pected respondents' packaging and marketing contained false and misleading advertising, and she relied on this suspicion in deciding to buy their products as potential targets for litigation. The crux of her argument is that the requisite "actual reliance" is established when a plaintiff (1) knows the

defendant may have made false or materially incomplete representations about its product, and (2) buys the product expecting to claim the purchase costs as damages if the representations are, in fact, false or incomplete. She is mistaken.

■ In the case of fraudulent misrepresentation, actual reliance occurs only when the plaintiff reposes confidence in the *truth* of the relevant representation, and acts upon this confidence. Section 546 of the Restatement Second of Torts, which addresses "causation in fact," states: "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a substantial factor in determining the course of conduct that results in his loss." This principle is clarified in section 548 of the Restatement Second of Torts: "The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity." Comment a to this section elaborates: "In order to justify recovery, the recipient of a misrepresentation must rely upon the truth of the misrepresentation itself, and his reliance upon its truth must be a substantial factor in inducing him to act or to refrain from action. (See § 546.) It is not enough that, without belief in its truth, he proceeds to enter into the transaction in the expectation that he will be compensated in an action for damages for its falsity." (Rest.2d Torts, § 548, com. a, p. 106.) Our Supreme Court has impliedly embraced this principle in endorsing section 546 of the Restatement Second of Torts. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

Claims for fraud by omission are also subject to the requirement of actual reliance, and thus fall within the scope of section 548 of the Restatement Second of Torts. Because these claims do not involve affirmative misrepresentations, we conclude that actual reliance for the purpose of fraud by omission occurs only when the plaintiff reposes confidence in the *material completeness* of the defendant's representations, and acts upon this confidence. (See *Carter v. Seaboard Finance* Co. (1949) 33 Cal.2d 564, 569–570 [203 P.2d 758] [claims for fraudulent misrepresentation and concealment fail for want of actual reliance when the plaintiff ignored the defendant's statements and relied solely on his own inspection of item he bought]; *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1418–1419 [92 Cal.Rptr.2d 577] [same].)

Here, Buckland concedes she suspected respondents' packaging and marketing was false or misleading, and she bought respondents' products solely to pursue litigation upon the vindication of her suspicions. She therefore

lacked the requisite confidence in the truth and material completeness of their representations, and cannot establish actual reliance for the purpose of her fraud claims.

### C. CLRA Claim

Buckland also asserts a claim under the CLRA, which targets a class of "unfair methods of competition and unfair or deceptive acts or practices" enumerated in Civil Code section 1770. (Civ. Code, § 1770, subd. (a).) "Any consumer who suffers any damage as a result of the use or employment by any person of" this unlawful conduct may bring an action for damages, restitution of property, and injunctive relief. (Civ. Code, § 1780, subd. (a).) The consumer may also bring a class action on behalf of "other consumers similarly situated." (Civ. Code, § 1781, subd. (a).) The CLRA is interpreted liberally "to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.)

Buckland's CLRA claim asserted that respondents' packaging and advertising, as alleged in her fraud claims, misrepresented their products as having "characteristics, ingredients, uses, benefits, or quantities" they do not have, and misrepresented the products as "of a particular standard, quality, or grade." (Civ. Code, § 1770, subd. (a)(5), (7).) In sustaining the demurrer to this claim, the trial court indicated that Buckland could not establish that Threshold's conduct caused her alleged damages. Again, we agree.

Under Civil Code section 1780, subdivision (a), CLRA actions may be bought only by a consumer "who suffers any damage *as a result of the use or employment*" of a proscribed method, act, or practice. (Italics added.) "This language does not create an automatic award of statutory damages upon proof of an unlawful act. Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." (*Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal.App.4th 746, 754 [15 Cal.Rptr.3d 271].) Accordingly, "plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm." (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292 [119 Cal.Rptr.2d 190]; see also *Anunziato v. eMachines, Inc.* (C.D.Cal. 2005) 402 F.Supp.2d 1133, 1136 [recognizing the CLRA imposes reliance requirement].)

Because Buckland's CLRA claim sounds in fraud, the key issue is whether her lack of actual reliance for the purpose of fraud also defeats her CLRA claim. In *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644 [22 Cal.Rptr.2d 419] (*Caro*), a consumer initiated a class action for fraud and

violations of the CLRA, alleging in his complaint that the defendants had misrepresented a product as "fresh" orange juice, that is, juice from squeezed oranges that had not been frozen or altered. (18 Cal.App.4th at pp. 651–652.) After the consumer admitted knowing when he bought the product that it did not contain fresh orange juice, the trial court ruled he could not properly represent a class whose members alleged they had been deceived into believing they were buying fresh orange juice. (*Id.* at pp. 662–663.)

The court in *Caro* affirmed. (*Caro, supra,* 18 Cal.App.4th at pp. 668–669.) Reasoning that a misrepresentation is material for a plaintiff only if there is reliance—that is, " ' "without the misrepresentation, the plaintiff would not have acted as he did" ' "—the court concluded "there was no material misrepresentation to [the consumer] because he did not believe defendants' product to be 'fresh.' " (*Id.* at p. 668, quoting *Lacher v. Superior Court* (1991) 230 Cal.App.3d 1038, 1049 [281 Cal.Rptr. 640].) It thus held that the consumer's admissions precluded him from litigating the class claims alleged in the complaint, including the CLRA claims.[3] (*Caro,* at pp. 664–665.) In view of *Caro,* plaintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions. (See also *Anunziato v. eMachines, Inc., supra,* 402 F.Supp.2d at p. 1136.) Buckland's CLRA claim therefore fails.

Buckland disputes that under the CLRA she is required to show respondents' packaging and advertising deceived her. Her reliance on *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197 [197 Cal.Rptr. 783, 673 P.2d 660] (*Children's Television*) and its progeny is misplaced, as these cases do not address the requirement of actual reliance under the CLRA. In *Children's Television,* our Supreme Court examined the UCL, FAL, and SFDCA, as then in effect—but not the CLRA—and stated: "To state a cause of action under these statutes . . . , it is necessary only to show that 'members of the public are likely to be deceived.' [Citations.] Allegations of actual deception, reasonable reliance, and damage are unnecessary." (*Children's Television, supra,* 35 Cal.3d at p. 211, quoting *Chern v. Bank of America* (1976) 15 Cal.3d 866, 876 [127 Cal.Rptr. 110, 544 P.2d 1310].) Subsequently, several courts have applied this standard—sometimes called the "reasonable consumer" standard (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 508 [129 Cal.Rptr.2d 486])—to determine whether a defendant's representations were unlawful under Civil Code section 1770, which enumerates the practices, acts, and methods proscribed by the

---

[3] The court noted that the plaintiff additionally claimed the product's packaging actually misled him into believing it had a different feature—namely, that it was " 'premium' " orange juice—but concluded that any claim resting on this misrepresentation was not typical of the class claims alleged in his complaint (see Civ. Code, § 1781, subd. (b)(3)). (*Caro, supra,* 18 Cal.App.4th at pp. 664–665.)

CLRA. (*Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1353, 1360–1362 [8 Cal.Rptr.3d 22]; *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 681–683 [38 Cal.Rptr.3d 36]; *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 806–807 [49 Cal.Rptr.3d 555]; *Benson v. Kwikset Corp.* (2007) 152 Cal.App.4th 1254, 1274–1275 [62 Cal.Rptr.3d 284].) Because none of these cases addresses the separate requirement for causation imposed on CLRA claims in subdivision (a)(1) of Civil Code section 1780, they are not authority on the issue of actual reliance. (*Bishop v. Merging Capital, Inc.* (1996) 49 Cal.App.4th 1803, 1807 [57 Cal.Rptr.2d 556].)[4]

Buckland also suggests that *McAdams v. Monier, Inc.* (2007) 151 Cal.App.4th 667 [60 Cal.Rptr.3d 111] (*McAdams*) stands for the proposition that she need only show that Threshold's representations were likely to mislead the public in order to satisfy the causation requirement for a CLRA claim. In *McAdams*, the court held that the plaintiff properly alleged the element of reliance for a class claim under the CLRA by pleading that the defendant had made material representations about its product to the public. (*McAdams*, at pp. 674–678.) The court pointed to *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814 [94 Cal.Rptr. 796, 484 P.2d 964], and *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr. 388, 556 P.2d 750], in which our Supreme Court addressed class fraud claims, and reasoned that alleging a material misrepresentation raised the inference that each class member *had relied* on the misrepresentation. (*McAdams, supra*, 151 Cal.App.4th at pp. 676–677.) *McAdams* thus supports our conclusion that actual reliance is an element of a CLRA claim sounding in fraud. As explained (see pt. B., *ante*), Buckland's declaration establishes that she did not rely on the truth or completeness of respondents' representations.

### D. UCL Claims

We turn to Buckland's claims under the UCL, whose "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 [119 Cal.Rptr.2d 296, 45 P.3d 243].) Public officials and qualified private parties may pursue UCL claims. (Bus. & Prof. Code, § 17204). The UCL defines "unfair competition" broadly to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." (Bus. &

---

[4] This conclusion also applies to other cases cited by Buckland that identify misleading advertising as an unlawful practice under the CLRA, but do not address whether CLRA claims sounding in fraud are subject to a reliance requirement. (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 53–54 [134 Cal.Rptr.2d 420]; *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 35–38 [124 Cal.Rptr. 852].)

Prof. Code, § 17200.) Although the UCL targets a wide range of misconduct, its remedies are limited because UCL actions are equitable in nature. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 [131 Cal.Rptr.2d 29, 63 P.3d 937].) Damages cannot be recovered, and plaintiffs are generally limited to injunctive relief and restitution. (*Ibid.*)

The key issue before us is whether Buckland has standing to assert claims under the UCL. Prior to the enactment of Proposition 64, the UCL was subject to abuse by attorneys who used it as the basis for legal " 'shakedown' " schemes. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 178–179, fn. 10 [59 Cal.Rptr.3d 142, 158 P.3d 718].) The court in *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317 [9 Cal.Rptr.3d 844], described a typical scheme: "Attorneys form a front 'watchdog' or 'consumer' organization. They scour public records on the Internet for what are often ridiculously minor violations of some regulation or law by a small business, and sue that business in the name of the front organization. Since even frivolous lawsuits can have economic nuisance value, the attorneys then contact the business (often owned by immigrants for whom English is a second language), and point out that a quick settlement (usually around a few thousand dollars) would be in the business's long-term interest."

In November 2004, the voters of California approved Proposition 64, which amended Business and Professions Code section 17204 to provide that a private individual has standing to assert a claim under the UCL only if he or she " 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' " (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207]; see Prop. 64, § 3.) Proposition 64 also amended Business and Professions Code section 17203 to provide that, aside from public officials, a person may pursue " 'representative claims or relief on behalf of others' " only if the person meets the new standing requirement and otherwise complies with Code of Civil Procedure section 382, which governs class actions. (39 Cal.4th at p. 228; see Prop. 64, § 2.)[5] These amendments imposed significant new requirements on claimants under the UCL, which had previously "authorized any person acting for the general public to sue for relief from unfair competition," and did not predicate standing "on a showing of injury or damage." (*Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th at pp. 227–228.) In approving Proposition 64, the voters found and declared that the amendments were necessary to prevent abusive UCL actions by attorneys whose clients had not been "injured in fact" or used the defendant's product or service, and to ensure "that only the California

---

[5] In addition, Proposition 64 amended other provisions of the UCL to ensure that enumerated public officials have exclusive use of civil penalties obtained in UCL actions. (Prop. 64, § 4.)

Attorney General and local public officials [are] authorized to file and prosecute actions on behalf of the general public."[6] (Prop. 64, § 1, subds. (b), (e), (f).)

■ Generally, "[a] litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits. [Citation.]" (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000 [24 Cal.Rptr.3d 474].) Because standing goes to the existence of a cause of action, lack of standing may be raised by demurrer or at any time in the proceeding, including at trial or in an appeal. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 862, p. 320; *Blumhorst v. Jewish Family Services of Los Angeles, supra,* 126 Cal.App.4th at p. 1000.) Standing requirements vary from statute to statute, and must be assessed in light of intent of the statute at issue. (5 Witkin, *supra,* § 862, p. 320; *Blumhorst, supra,* at p. 1000.)

■ Here, Buckland asserted claims under the UCL, alleging that Threshold's packaging and marketing violated interests protected by the FDCA, the SFDCA, and the statutes underlying her fraud claims. The only loss of money or property she identified was her expenditure of funds to buy respondents' allegedly defective products, and she conceded that she brought the UCL

---

[6] Section 1 of Proposition 64 states: "The people of the State of California find and declare that: [¶] (a) This state's unfair competition laws set forth in Sections 17200 and 17500 of the Business and Professions Code are intended to protect California businesses and consumers from unlawful, unfair, and fraudulent business practices. [¶] (b) These unfair competition laws are being misused by some private attorneys who: [¶] (1) File frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit. [¶] (2) File lawsuits where no client has been injured in fact. [¶] (3) File lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant. [¶] (4) File lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision. [¶] (c) Frivolous unfair competition lawsuits clog our courts and cost taxpayers. Such lawsuits cost California jobs and economic prosperity, threatening the survival of small businesses and forcing businesses to raise their prices or to lay off employees to pay lawsuit settlement costs or to relocate to states that do not permit such lawsuits. [¶] (d) It is the intent of California voters in enacting this act to eliminate frivolous unfair competition lawsuits while protecting the right of individuals to retain an attorney and file an action for relief pursuant to Chapter 5 (commencing with Section 17200) of Division 7 of the Business and Professions Code. [¶] (e) It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution. [¶] (f) It is the intent of California voters in enacting this act that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public. [¶] (g) It is the intent of California voters in enacting this act that the Attorney General, district attorneys, county counsels, and city attorneys maintain their public protection authority and capability under the unfair competition laws. [¶] (h) It is the intent of California voters in enacting this act to require that civil penalty payments be used by the Attorney General, district attorneys, county counsels, and city attorneys to strengthen the enforcement of California's unfair competition and consumer protection laws."

claims as an individual, rather than as a class representative.[7] The trial court concluded that the claims failed because, in view of the admissions in her declaration, Buckland had not suffered the requisite injury in fact and loss. We agree. As we explain below, (1) Buckland's purchase of the products does not constitute an "injury in fact," and (2) she has failed to establish that she "lost money or property as a result of . . . unfair competition" (Bus. & Prof. Code, § 17204).

### 1. *Injury In Fact*

To interpret the term "injury in fact," we look to the language of Proposition 64 itself.[8] In approving Proposition 64, the voters declared their intent "to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact *under the standing requirements of the United States Constitution.*" (Prop. 64, § 1, (e), italics added.) We therefore examine those requirements.

As the United States Supreme Court explained in *Havens Realty Corp. v. Coleman* (1982) 455 U.S. 363, 372 [71 L.Ed.2d 214, 102 S.Ct. 1114] (*Havens*), article III of the United States Constitution obliges plaintiffs in federal courts to show, at a minimum, an "injury in fact," that is, "as a result of the defendant's actions [they have] suffered 'a distinct and palpable injury.' " (Quoting *Warth v. Seldin* (1975) 422 U.S. 490, 501 [45 L.Ed.2d 343, 95 S.Ct. 2197].) The requisite injury is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical," ' [citations]." (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560 [119 L.Ed.2d 351, 112 S.Ct. 2130], fn. omitted.)

---

[7] On appeal, Buckland suggests that her injury in fact includes "the personal health risk she incurred" from one of the many defendants' products, an apparent allusion to her declaration statement that she used an unspecified product. To the extent this constitutes an offer to amend her complaint, it fails to cure the complaint's defects. Generally, a party seeking to amend a complaint on appeal has the burden of "enumerate[ing] the facts and demonstrate[ing] how those facts establish a cause of action." (*Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 890.) Here, Buckland never alleges she used any specified *respondent's* product; nor does she identify the risk or explain how it constitutes an injury in fact.

[8] Generally, "[i]n construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) To determine this intent, we look first to the plain language of the law, read in context. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) "Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure . . . ." (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 543 [277 Cal.Rptr. 1, 802 P.2d 317], citation omitted.)

The extent to which costs incurred in connection with litigation constitute an injury in fact is addressed in *Havens* and its progeny. In *Havens*, several individuals and a nonprofit organization brought an action against an apartment owner and its employee under the Fair Housing Act (42 U.S.C. § 3601 et seq.) for "racial steering,"—the practice of directing potential renters to racially segregated housing. (*Havens, supra,* 455 U.S. at pp. 366–369.) The court held the organization had alleged an injury in fact under article III of the United States Constitution in asserting that the defendants' steering practices forced it to divert resources from its mission of providing counseling and referral services to homeseekers to identifying and counteracting the defendants' racially discriminatory practices. (*Havens,* at p. 379.)

Following *Havens*, the circuits have divided over whether the costs an organization incurs to pursue litigation are sufficient, in themselves, to establish an injury in fact. In *Spann v. Colonial Village, Inc.* (D.C. Cir. 1990) 283 U.S. App.D.C. 216, 219 [899 F.2d 24, 27], the District of Columbia Circuit Court (Ginsburg, J.) concluded: "An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation. [Citation.]" It appears that a majority of the circuits that have expressly resolved this issue, including the Ninth Circuit, have followed *Spann.* (*Walker v. City of Lakewood* (9th Cir. 2001) 272 F.3d 1114, 1124, fn. 3; *Association for Retarded Citizens v. Dallas County* (5th Cir. 1994) 19 F.3d 241, 244; *Fair Housing Council v. Montgomery Newspapers* (3d Cir. 1998) 141 F.3d 71, 80; *Housing Opportunities v. Cincinnati Enquirer* (6th Cir. 1991) 943 F.2d 644, 646.) These circuits have nonetheless held that funds expended independently of the litigation to investigate or combat the defendant's misconduct may establish an injury in fact. (*Spann, supra,* 899 F.2d at p. 27; *Fair Housing of Marin v. Combs* (9th Cir. 2002) 285 F.3d 899, 905; *Louisiana ACORN Fair Housing v. LeBlanc* (5th Cir. 2000) 211 F.3d 298, 305; *Alexander v. Riga* (3d Cir. 2000) 208 F.3d 419, 427, fn. 4; *Hooker v. Weathers* (6th Cir. 1993) 990 F.2d 913, 915.) Three circuits have concluded that litigation expenses constitute an injury in fact because they represent a diversion of organizational resources. (*Village of Bellwood v. Dwivedi* (7th Cir. 1990) 895 F.2d 1521, 1526; *Ragin v. Harry Macklowe Real Estate Co.* (2d. Cir. 1993) 6 F.3d 898, 905; *Arkansas ACORN Fair Housing v. Greystone Development* (8th Cir. 1998) 160 F.3d 433, 434–435.) Another circuit has recognized the issue but not resolved it. (*Cent. Ala. Fair Housing Center v. Lowder Realty* (11th Cir. 2000) 236 F.3d 629, 641, fn. 4.)

We follow the majority rule on this issue, which is supported by the weight of authority. Although the federal courts have applied this rule to organizations, its rationale also encompasses individuals who claim to have suffered an injury in fact solely by expending funds to pursue litigation. Here,

Buckland purchased the product to establish standing for litigation against Threshold. Although she indicated she also bought it to investigate claims against Threshold, she has not identified any investigation expenses other than the cost of the product. Because the costs were incurred solely to facilitate her litigation, her purchase does not constitute the requisite injury in fact; to hold otherwise would gut the injury in fact requirement.[9]

Buckland contends that her purchase of the product amounted to an injury in fact, pointing to *Havens, Southern Cal. Housing v. Los Feliz Towers Homeow.* (C.D.Cal. 2005) 426 F.Supp.2d 1061 (*Housing Rights*), and several other cases. We are not persuaded. As we have explained, the *Havens* court held that an organization alleged an injury in fact under article III of the United States Constitution by asserting that the defendants' misconduct compelled it to divert resources from its other programs to helping homeseekers affected by the defendants. (*Havens, supra,* 455 U.S. at p. 379.) In *Housing Rights,* an organization transferred resources from its other activities to investigate a claim that a disabled condominium owner had suffered discrimination in her residential complex, and then initiated a UCL action against the complex. (*Housing Rights, supra,* 426 F.Supp.2d at p. 1063.) In interpreting the "injury in fact" requirement under the UCL, the district court followed *Havens,* and concluded that the organization's diversion of resources toward investigating the claim prior to the litigation constituted an "injury in fact." (426 F.Supp.2d at pp. 1068–1069.) Unlike the organizations in *Havens* and *Housing Rights,* Buckland does not allege any comparable diversion of resources, and her investigation costs, if any, are inextricably tied to her litigation expenses.

---

[9] In so concluding, we do not address whether Buckland's other allegations may establish an injury in fact. As the United States Supreme Court has explained, the "injury in fact" requirement under article III of the United States Constitiution "turns on the nature and source of the claim asserted," and in some cases, an injury in fact "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .' " (*Warth v. Seldin, supra,* 422 U.S. at p. 510, quoting *Linda R. S. v. Richard D.* (1973) 410 U.S. 614, 617, fn. 3 [35 L.Ed.2d 536, 93 S.Ct. 1146].) Thus, in *Havens,* the court concluded that an individual who had acted as a "tester"—that is, posed as a prospective renter to determine the defendants' conduct—alleged an injury in fact, even though she lacked any intent to obtain housing, because the Fair Housing Act accorded a cause of action to "any person" who had received false information about housing opportunities (42 U.S.C. § 3604(d)), and the tester alleged the defendants had made false statements about available apartments. (*Havens, supra,* 455 U.S. at pp. 366–369.)

Here, Buckland suggests she has standing under the UCL because Threshold allegedly violated interests protected by the FDCA, Health and Safety Code section 111330, and the statutes underlying her other claims against Threshold. Because we conclude Buckland has not satisfied the other UCL standing requirement—namely, that she "lost money or property as a result of . . . unfair competition" (see pt. D.2., *post*), we need not address this contention.

Buckland's remaining cases involve UCL claims resting on allegations of economic injury from deceptive business practices, but in none of the cases does the court suggest the plaintiff suspected the deceptive practice prior to purchasing the defendant's product, or bought the product in order to pursue litigation. (*McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1391–1400 [29 Cal.Rptr.3d 437]; *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 333–336, 359–360 [44 Cal.Rptr.3d 426]; *Aron v. U-Haul Co. of California, supra,* 143 Cal.App.4th at pp. 800–803; *Anunziato v. eMachines, Inc., supra,* 402 F.Supp.2d at pp. 1136–1139; *Williams v. Gerber Products Co.* (S.D.Cal. 2006) 439 F.Supp.2d 1112, 1114–1118.) They are thus not authority on the question before us, viz., whether a plaintiff who buys a product to pursue litigation establishes standing under the UCL. (*Bishop v. Merging Capital, Inc., supra,* 49 Cal.App.4th at p. 1807.)

### 2. *Loss of Money or Property*

The remaining question is whether Buckland's purchase of Threshold's product satisfies the other standing requirement, which obliges plaintiffs to show that they "lost money or property as a result of . . . unfair competition." (Bus. & Prof. Code, § 17204.) Following the canons of statutory interpretation, we seek a construction that avoids rendering the requirement "redundant and a nullity" (*Cal Pacific Collections, Inc. v. Powers* (1969) 70 Cal.2d 135, 139 [74 Cal.Rptr. 289, 449 P.2d 225]), and harmonize it with the other provisions of the UCL (*Legislature v. Deukmejian* (1983) 34 Cal.3d 658, 676 [194 Cal.Rptr. 781, 669 P.2d 17]).

Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution. As our Supreme Court explained prior to Proposition 64, restitution under the UCL is not the recovery of compensatory damages, but a form of equitable relief. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173–178 [96 Cal.Rptr.2d 518, 999 P.2d 706].) This relief is authorized by a portion of Business and Professions Code section 17203 not amended by Proposition 64.[10] Section 17203 constitutes "a grant

---

[10] Business and Professions Code section 17203 provides in pertinent part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

of broad equitable power" that requires "consideration of the equities on both sides of a dispute." (*Cortez v. Purolator Air Filtration Products Co.*, *supra*, 23 Cal.4th at p. 180.)

We therefore interpret the standing requirement in light of equitable principles. Section 112 of the Restatement of Restitution states: "A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons." Comment a to the section states that this rule "is of the widest application" because it affirms the fundamental principle that volunteers are not entitled to restitution of benefits they confer. (Rest., Restitution, § 112, com. a, p. 461.) Comment b explains the qualification in section 112 to this fundamental principle: "Under some conditions, it is desirable to encourage persons to interfere with the affairs of others. Thus where it is imperatively necessary for the protection of the interests of third persons or of the public that a duty owned by another should be performed, a stranger who performs it may be entitled to restitution . . . ." (Rest., Restitution, § 112, com. b, pp. 462–463.) California courts have accepted the principles asserted in section 112. (*Stein v. Simpson* (1951) 37 Cal.2d 79, 86 [230 P.2d 816]; see *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315–1316 [265 Cal.Rptr. 525].)

Here, Buckland's declaration establishes that she did not buy Threshold's product due to "mistake, coercion or request" (Rest., Restitution, § 112), but to establish standing for an action in the public interest. In approving Proposition 64, the voters declared their intention to ensure that "only" public officials are authorized to undertake UCL actions on behalf of the general public, and amended the UCL to limit actions by individuals pursuing "representative claims or relief on behalf of others" to class actions. (Prop. 64, §§ 1, subd. (f), 2, italics omitted.) The voters have thus effectively determined that it is not "desirable to encourage" individuals to incur expenses for UCL actions in the public interest, within the meaning of the principles stated in the Restatement of Restitution. (Rest., Restitution, § 112, com. b, p. 463). Accordingly, Buckland's purchase of Threshold's product cannot reasonably be viewed as "lost" money or property under the standing requirement (Bus. & Prof. Code, § 17204).[11]

---

[11] In so concluding, we do not hold that the standing requirement at issue incorporates a requirement of actual reliance. That issue is presently before our Supreme Court. (*Pfizer, Inc. v. Superior Court* (2006) 141 Cal.App.4th 290 [45 Cal.Rptr.3d 840], review granted July 11, 2006, S145775.) Our conclusion is limited to the special facts presented here, which involve an individual who voluntarily buys defendant's product to pursue a UCL action in the public interest against defendant.

 Pointing to the UCL's historical role in protecting consumers, Buckland argues that the Proposition 64 amendments should not be interpreted to bar actions by individuals like her, who suspect that a defendant's product labeling is misleading, and buy the product to pursue an action in the public interest. As our Supreme Court has explained in connection with statutes enacted through the initiative process, "[f]or [the] purposes of interpreting these statutes, . . . it matters not whether the drafters[ or] voters . . . consciously considered all the effects and interrelationships of the provisions they wrote and enacted. We must take the language . . . , as it was passed into law, and must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions." (*People v. Garcia* (1999) 21 Cal.4th 1, 14 [87 Cal.Rptr.2d 114, 980 P.2d 829].) Because Buckland's contention cannot be reconciled with these principles, we are obliged to reject it. In sum, she had failed to establish standing to pursue her UCL claims.

### E. *FAL Claim*

 Finally, we agree with the trial court that the deficiencies in Buckland's UCL claims are also fatal to her FAL claim, which relies on the same factual allegations. The FAL makes it unlawful for any person or corporation "to induce the public to enter into any obligation relating" to a service "or anything of any nature whatsoever" by means of advertising that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." (Bus. & Prof. Code, § 17500.) Like the UCL, the FAL authorizes actions by public officials and private individuals. (Bus. & Prof. Code, § 17535.) Again, like the UCL, remedies for individuals under the FAL are limited to restitution and injunctive relief, and recovery of damages is not authorized. (*Chern v. Bank of America, supra,* 15 Cal.3d at p. 875; *Colgan v. Leatherman Tool Group, Inc., supra,* 135 Cal.App.4th at p. 695.)

In approving Proposition 64, the voters made identical findings regarding the UCL and FAL, and amended Business & Professions Code section 17535 to impose the standing requirements and limits placed upon UCL actions. (Prop. 64, §§ 1, 5.) As amended, this section permits an individual to assert a claim under the FAL only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition" (§ 17535), and subjects representative actions by individuals to the requirements of class actions. Buckland's FAL claim thus fails as a matter of law.[12]

---

[12] In light of this conclusion and our conclusions about Buckland's other claims, it is unnecessary for us to resolve other issues addressed on appeal, including whether the FDCA preempts Buckland's claims.

## DISPOSITION

The order denying injunctive relief and judgment of dismissal are affirmed.

Willhite, Acting P. J., and Suzukawa, J., concurred.

On October 22, 2007, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 16, 2008, S157919.