SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER and Mimi Greenberg, Plaintiffs

v.

LOS FELIZ TOWERS HOMEOWNERS ASSOCIATION and Los Feliz Towers Homeowners Association Board of Directors, Defendants.

No. CV 04–2716 CBM.

United States District Court, C.D. California, Western Division.

May 20, 2005.

Connie Y. Chung, Liam J. Garland, Nisha Narendra Vyas, Southern California Housing Rights Center, Los Angeles, CA, David G. Geffen, David G. Geffen Law Offices, Santa Monica, CA, for Plaintiffs.

Barry J. Reagan, Jeffrey J. Halfen, Joshua C. Traver, Sean D. Cowdrey, Procter McCarthy and Slaughter, Ventura, CA, David C. Swedelson, Melanie J. Bingham, Swedelson & Gottlieb, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE ADA CLAIM and DENYING DEFENDANTS' AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AS TO ALL OTHER CLAIMS

MARSHALL, District Judge.

The matters before the Court are Defendants' and Plaintiffs' cross-motions for summary judgment. The Motions were taken under submission on April 25, 2005. Upon consideration of the papers submitted, the Court GRANTS Defendants' Motion for Summary Judgment as to the ADA claim and DENIES both motions as to all other claims.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2004, Plaintiffs Mimi Greenberg and the Southern California Housing Rights Center (HRC) filed this action for housing discrimination under the Fair Housing Amendments Act, Americans with Disabilities Act, California Fair Employment and Housing Act, UNRUH Act, and for Unfair Business Practices Act. Plaintiff Greenberg, who is disabled, resided at Los Feliz Towers condominiums ("Towers") from 1993 until 2004. The gravamen of her complaint is that the Towers failed to provide her with an accessible parking space as a reasonable accommodation of her disability. Defendants filed a Motion for Summary Judgment on March 25, 2005. Plaintiff filed a Motion for Summary Judgment on April 4, 2005. Timely oppositions and replies were filed to both motions.

## STANDARD OF LAW

Summary judgment against a party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is *entitled to a judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

### A. Undisputed Material Facts

Based on the two motions for summary judgment, the Court finds that the following facts are undisputed and will not be litigated at trial:

1. Los Feliz Towers is a 196–unit private condominium complex that includes two condominium buildings, underground parking, a swimming pool, outside "guest" parking spaces adjacent to the entrances of the two buildings, and a clubhouse.

2. Except for the manager's apartment, the condominium units are owned by private owners. Ownership of a condominium comes with deeded ownership of a specific parking place in the underground parking structures. In addition, there are 20 parking spaces reserved for guests.

3. Los Feliz Towers does not have any parking spaces reserved for handicapped persons.

4. The "manager's parking space" is located on the top level, near the entrance to the condominium.

5. Plaintiff Greenberg is disabled. She suffers from problems with mobility, fine-motor dexterity, fatigue, short-term memory, and loss of bladder control. She uses a scooter in lieu of walking on most occasions because she fatigues easily, which causes her to stumble and fall.

6. In 1993, Plaintiff Mimi Greenberg rented Unit 808 at Los Feliz Towers.

7. In the late 1990s, Ms. Greenberg purchased Unit 708 at the Los Feliz Towers. As a Towers' homeowner, Ms. Greenberg is deeded a tandem space in which two vehicles can be parked one in front of the other.

8. In 1999, JoAnn McKinney became the Resident Manager of Los Feliz Towers. Ms. McKinney knew that Ms. Greenberg was disabled.

9. Ms. McKinney uses the "manager's" parking space on the top level.

10. The Feliz Towers' "parking policy" for disabled residents requires that the resident call a Towers' employee, who, in turn, calls the security guard, who retrieves the disabled resident's vehicle for the resident to pick up in front of the building. Upon the resident's return to the Feliz Towers, the vehicle is dropped off at the front of the building and an employee calls another employee to park the vehicle in the parking garage.

11. Ms. Greenberg utilized the above-described parking service while living at the Towers. Prior to late 1999, Ms. Greenberg never had a problem with the parking service as an accommodation for her disability.

12. In 1999, Ms. Greenberg bought a handicapped-equipped van with a lift on the passenger side that enabled her to scoot straight into the van, transfer to the driver's seat, and drive the car using hand-controls.

13. Beginning in late 1999, Ms. Greenberg requested an accessible parking space. She offered to trade her parking place for the manager's space. In 2001, Ms. Greenberg formally requested that the Board reserve for her the manager's space. This request was rejected by the Board. Sometime later, Ms. Greenberg requested that one of the guest spaces be reserved for her use. This request was also

rejected by the Board in 2003 and 2004.

14. Ms. Greenberg would be able to "self-park" in three of the twenty guest parking spaces or in the manager's space. She would be able to enter these spaces with her van and exit the vehicle using her lift without interfering with any neighboring space.

15. Ms. Greenberg felt that the Towers' "parking service" diminished her independence and autonomy because she had to coordinate her departure time with Towers' employees before leaving her unit and hand her over the keys to an employee when she returned.

16. Ms. Greenberg experienced loss of bladder control "a dozen times" while driving and felt humiliated by having to hand her keys over to the Towers.employee after she had "wet the seat."

17. It could take Ms. Greenberg up to six minutes to safely enter or exit her van in front of the building. Since the van's ramp extended into the lane of traffic, residents of the Towers could not enter or exit until Ms. Greenberg was finished. Residents were forced to wait and appeared frustrated.

18. The ignition switch, the trunk lock, and a picture frame in Ms. Greenberg's vehicle were broken by Los Feliz Towers employees. The cost of repairing or replacing these items was less than $350 and Ms. Greenberg never asked for compensation from the Homeowners' Association.

19. Employees of the Association lost two garage "clickers." Other than the clickers, nothing was ever missing from Ms. Greenberg's car.

20. Ms. Greenberg felt that the employees who parked and retrieved her vehicle were "honest and nice guys." Neither the doormen at Los Feliz Towers nor the security guards were ever discourteous to Ms. Greenberg.

21. In 2003, two other residents who are not parties to this action also requested the "manager's space." These requests were also denied. However, since 1999, no residents besides Ms. Greenberg have requested use of the Towers' guest parking spaces.

22. In January 2003, the Homeowners Association offered to bring Ms. Greenberg's car to one of the guest parking spaces in front of the building each morning, where it would remain all day, and then return the car in the evening to Ms. Greenberg's designated parking space. This offer was rejected by Ms. Greenberg.

23. In February 2003, the Board wrote to Ms. Greenberg that "the Association will make every effort to have your car available to you within 15 minutes of your request."

24. In an email to another disabled tenant regarding the parking service for disabled tenants, Ms. McKinney wrote, "the Association can offer [the disabled resident] valet parking with the provision that [if] you provide us with as much advanced notice as you can, the car would be delivered within 30 minutes."

25. Plaintiff Greenberg moved out of Los Feliz Towers because of the parking situation. She began leasing her unit to tenants on May 1, 2004.

26. During the time frame when Ms. Greenberg resided at Los Feliz

Towers there were many disabled residents.

27. Neither Ms. McKinney or Los Feliz Towers' employees ever acted maliciously towards Ms. Greenberg.

28. The Towers' employees have not received any fair housing training or training on how to serve residents with disabilities.

29. The Towers' Board has never received fair housing training.

## B. Analysis

### 1. Federal Fair Housing Amendments Act (FHAA)

The FHAA makes unlawful discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2)(A). Discrimination may be shown through disparate treatment, disparate impact, or refusal to make "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204(a); *Gamble v. City of Escondido,* 104 F.3d 300, 304 (9th Cir.1997).

■ Plaintiffs argue that Defendant is discriminating by failing to make a reasonable accommodation. To show discrimination based on failure to provide a reasonable accommodation, a plaintiff must demonstrate that (1) he or she suffers from a handicap as defined by the Fair Housing Act; (2) defendants knew or reasonably should have known of Plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. *United States v. California Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1380 (9th Cir.1997); *Giebeler v. M & B Associates,* 343 F.3d 1143, 1148 (9th Cir.2003). Whether a requested accommodation is required under the Act is "highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Home Park Mgmt. Co.,* 29 F.3d 1413, 1418 (9th Cir.1994).

Here, it is undisputed that Plaintiff Greenberg has a handicap as defined by the Act. Furthermore, it is undisputed that the manager and the Board knew or should have known about the handicap at the time that Ms. Greenberg requested the manager's space and the guest spaces. The issues are the third and fourth prongs of the test. Defendants deny that providing Ms. Greeberg with either the manager's space or one of three "accessible" guest spaces may have been "necessary" to afford Ms. Greenberg an equal opportunity to enjoy the dwelling. In order to prove that an accommodation may be necessary, "plaintiffs must show that, but for the accommodation, they will likely be deprived of the opportunity to enjoy the housing of their choice." *United States v. California Mobile Home Park,* 107 F.3d 1374, 1380–81 (9th Cir.1997). Ms. Greenberg lived in the building for many years and used the Towers "parking policy." However, Ms. Greenberg testified that the parking arrangement ceased being acceptable when she purchased a van with a lift in 1999 and the parking service employees "did not know how to use it." Ms. Greenberg further testified that if the employees had known how to drive the van, the arrangement would have remained acceptable until two years ago, when "the urinary urgency and frequency became uncontrollable." *Id.* at 42: 9–16. When she requested a parking space that she could access on her own, "it was really imperative because [she] was having bladder problems." *Id.* at 92:1–3. In addition,

Ms. Greenberg testified that on one or two occasions she sometimes had to wait "unreasonable lengths of time" for the parking service employees to retrieve her car.

■ In requiring landlords to make reasonable accommodations by providing handicapped parking spaces for handicapped tenants, the Ninth Circuit has reasoned that "the handicapped person faces injury or pain by having to travel long distances from the house to the car ... without a parking space close to the apartment, the handicapped individual's use and enjoyment of the dwelling is diminished." *United States v. California Mobile Home Park Management Company,* 107 F.3d 1374, 1381 (9th Cir.1997). In *Shapiro v. Cadman Towers Inc.,* 51 F.3d 328, 335 (2nd Cir.1995), the Second Circuit found discrimination under the FHAA where the Defendant failed to make an exception to its traditional waiting list policy for parking because, without a nearby parking space, the plaintiff was "subjected to a risk of injury, infection, and humiliation every time she leaves her dwelling and each time she returns home. . . . under these circumstances, nearby parking is a substantial factor in [plaintiff's] 'use and enjoyment' of her dwelling." *See also Hubbard v. Samson Management Corporation,* 994 F.Supp. 187, 191 (S.D.N.Y.1998) (finding that the apartment management company had violated the federal Fair Housing Act by refusing to reserve a parking space for the plaintiff close to her home unless she paid for it because the plaintiff, "due to her handicap, experienced greater discomfort and difficulty than other tenants in going to and from her car"). In *Jankowski Lee & Associates v. Cisneros,* 91 F.3d

891, 895 (7th Cir.1996), the court held that a landlord violated the Fair Housing Act when it failed to provide a disabled tenant an assigned parking space close to his building. In that case, the disabled tenant had problems locating a space close to the entrance of the building because the handicapped and nonhandicapped spaces close to the entrance were usually filled. The disabled tenant had troubled walking, could not get in and our of his car if it was parked in a narrow spot, and had to carry a portable urinal because he did not have full, voluntary control of his bladder. Based on these cases and the facts in the present case, the Court finds that there is a material dispute of fact as to whether reserving for Ms. Greenberg either the manager's space or one of three guest spaces may have been necessary for Ms. Greenberg's use and enjoyment of the dwelling. Furthermore, there is a material dispute as to whether Defendants refused to provide a reasonable accommodation, as Defendant proposed a "solution" whereby the security guards would bring Ms. Greenberg's car to a guest space in front of her building in the morning and take it back to her underground parking space in the afternoon. Thus, the Court DENIES both motions for summary judgment as to the Fair Housing Act claim.[1]

### 2. American with Disabilities Act (ADA)

Defendants argue that the ADA is inapplicable here because the Homeowner Association is a private entity, not a place of "public accommodation." Plaintiffs do not contest this argument. The Court there-

---

**1.** Defendants' argument that it would not be fair to give the manager's space to Ms. Greenberg when other disabled residents have also requested the space is unpersuasive. The Federal Fair Housing Act requires courts to conduct an individualized inquiry. The issue is whether Defendant's parking policies affect Ms. Greenberg differently from other disabled owners in the Homeowners' Association. Even if most disabled owners are satisfied with the parking services provided, the Court must determine whether the parking arrangement interferes with Ms. Greenberg's use and enjoyment of her dwelling.

fore GRANTS Defendants' Motion for Summary Judgment with respect to the ADA claim.

### 3. California Fair Employment and Housing Act (FEHA)

An analysis under FEHA mirrors the analysis under the federal Fair Housing Act. *Walker v. City of Lakewood,* 272 F.3d 1114, 1131 n. 8 (9th Cir.2001). FEHA specifies that it is discrimination to "refus[e] to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." Cal. Gov't Code § 12927(c)(1). As discussed above under the FHAA, there is a material dispute as to whether reserving either the manager's space or one of three "accessible" guest spaces for Ms. Greenberg was necessary in order for Ms. Greenberg to use and enjoy her dwelling. The Court therefore DENIES both motions for summary judgment as to the reasonable accommodation claim under the FEHA.

### 4. California Unruh Civil Rights Act

The Unruh Civil Rights Act, Cal. Civil Code § 51 et seq., prohibits discrimination by business establishments, including those engaged in the sale or rental of property. Cal. Civil Code § 51.5. The California Supreme Court has found that a homeowners' association constitutes a "business establishment" under Unruh. *O'Connor v. Village Green Owners Ass'n,* 33 Cal.3d 790, 191 Cal.Rptr. 320, 662 P.2d 427 (1983). Specifically, Unruh provides that "[a]ny person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." Cal. Civ.

Code § 54.1(b). Since the same material disputes of fact discussed above exist with respect to the reasonable accommodation analysis under Unruh, the Court DENIES both motions as to this claim.

### 5. California Unfair Business Practices Act

A business practice that is unlawful, unfair or fraudulent violates the California Unfair Business Practices Act. Defendants argue that their Motion for Summary Judgment should be granted with respect to this claim because there is no evidence of unlawful conduct. As discussed above, however, there is a material dispute of fact as to whether the Defendants violated the federal Fair Housing Act, FEHA, and Unruh. Furthermore, even if the trier of fact finds that Defendant's actions were not unlawful they may find that the actions were unfair based on the same evidence discussed above.

Second, Defendants argue that Plaintiff Housing Rights Center has no standing to bring an action under the Unfair Business Practices Act. The recent amendment of Cal. Bus. & Prof.Code § 17204 limits standing to a party "who has suffered injury in fact and has lost money or property as a result of such unfair competition." The California Supreme Court has not yet addressed whether this provision applies retroactively to pending cases. However, all but one of the California appellate courts that have examined this issue have found that the amendment does apply retroactively. *See Branick v. Downey Savings and Loan Association,* 126 Cal.App.4th 828, 24 Cal. Rptr.3d 406 (Cal.App. 2nd Dist.2005) (finding that Proposition 64 applies retroactively to pending cases); *accord Benson v. Kwikset Corporation,* 126 Cal.App.4th 887, 24 Cal.Rptr.3d 683 (Cal.App. 3th Dist. 2005); *Bivens v. Corel,* 126 Cal.App.4th

1392, 24 Cal.Rptr.3d 847 (Cal.App.4th Dist. 2005); *Lytwyn v. Fry's Electronics, Inc.* (4th Dist. Feb. 22, 2005). *But see Californians For Disability Rights v. Mervyn's, LLC,* 24 Cal.Rptr.3d 301, 2005 WL 230019 (Cal.App. 1 Dist.2005) (finding that Proposition 64 only applies prospectively). Even if this amendment were retrospectively applied to the present case, the Housing Rights Center has standing because it presents evidence of actual injury based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (finding that a fair housing organization suffered injury to confer standing to sue under the Fair Housing Act where it devoted significant resources to identifying and counteracting discriminatory policies); *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,* 959 F.2d 742 (9th Cir. 1991) (holding that "the allegation that the EOIR's policy frustrates these goals [of helping refugees obtain asylum and withhold deportation] and requires the organizations to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing"); *Fair Housing of Marin v. Combs,* 285 F.3d 899 (9th Cir.2002)(finding that a fair housing organization has standing to sue under the Fair Housing Act where its resources were diverted to investigating and other efforts to combat defendant's discrimination). Since both Plaintiffs have standing and there is a material dispute of fact as to whether Defendants engaged in unlawful or unfair conduct, both motions for summary judgment are DENIED with respect to the claim under the Unfair Business Practices Act.

### 6. Negligence

■ To show negligence, Plaintiff must prove: (1) a legal duty to use due care; (2) breach of the duty; and (3) that the breach was the proximate cause of the resulting injury. *Wiener v. Southcoast Childcare Centers, Inc.,* 32 Cal.4th 1138, 1145, 12 Cal.Rptr.3d 615, 88 P.3d 517 (2004). Whether Defendants breached their duty depends on whether a reasonable accommodation may have been necessary for Ms. Greenberg to use and enjoy her dwelling and whether Defendants refused to provide such an accommodation. Since these facts are disputed, as discussed above, the Court DENIES both Motions as to the negligence claim.

### 7. Punitive Damages

■ Defendants argue that Plaintiffs cannot recover punitive damages because there is no evidence of malice. However, malice is not required. In civil rights actions, punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Since material disputes of fact remain as to the underlying claims, the Court DENIES Defendants' request that the Court rule on punitive damages at this stage.

### C. Defendants' Objections to Plaintiffs' Evidence

■ The Court sustains Defendants' Objection No. 1 to Exhibit A of Ms. Greenberg's Declaration based on hearsay. If Plaintiffs wish to offer evidence about Ms. Greenberg's medical diagnosis, they will need to present medical testimony on this subject. However, Ms. Greenberg may testify to things she knows based on her personal experience, such as her symptoms and the way that her disability impacts her life. Accordingly, the court sustains Defendants' Objection No. 2 as to the first sentence of paragraph 7 of the Decla-

ration of Mimi Greenberg, which states that she was diagnosed with multiple sclerosis in the 1990s. The Court overrules the objection as to the rest of paragraph 7, which is based on Ms. Greenberg's personal knowledge of her symptoms. Likewise, the Court sustains Defendants' Objection No. 3 to paragraph 21 of Ms. Greenberg's declaration as to the words "multiple sclerosis," but overrules the objection as to the rest of the paragraph, which is based on Ms. Greenberg's personal knowledge that her symptoms are exacerbated by stress and that the denial of her requests for an accessible space have caused her high levels of stress. The Court overrules Defendants' Objection No. 4 to paragraph 20 because the evidence is limited to Ms. Greenberg's knowledge of the other tenants in the building.

With respect to Defendants' objections to Liam Garland's declaration, the Court overrules Objection No. 5 to paragraph 2 of the declaration because the evidence is based on Mr. Garland's personal knowledge as Litigation Director. The Court also overrules Objection No. 6 to Exhibit F to the declaration. The evidence is not hearsay because it is not offered to prove the truth of the matter.

### CONCLUSION

Based on the foregoing, the Court: (1) GRANTS Defendants' Motion as to the claim under the ADA; (2) DENIES both Plaintiffs' and Defendants' Motions as to the claims under the federal Fair Housing Act, FEHA, Unruh Civil Rights Act, Unfair Business Practices Act, and Negligence; and (3) DENIES Defendants' request that the Court rule on punitive damages at this time.

**IT IS SO ORDERED.**